UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 21-1280(DSD/KMM)

Damarlo West,

        Plaintiff,

v.                                         **ORDER**

City of Minneapolis, a municipal
entity; Officer Tyler Klund,
in his individual and official
capacity; Sergeant Darcy Klund,
in his individual and official
capacity; Officer Steven W. Mosey,
in his individual and official
capacity; Officer Paul Luther Huynh,
in his individual and official
capacity; Officer Alexandra Dubay
in her individual and official
capacity; Officer Richard Curtis
Walker, in his individual and
official capacity; Officer Gabriel
Daniel Grout, in his individual
and official capacity; Officer
Justin Stetson, in his individual
and official capacity; and Officer
Doe, in his individual and official
capacity,

        Defendants.

This matter is before the court upon defendants' motion to dismiss. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is denied.

**BACKGROUND**

This civil rights dispute arises from plaintiff Damarlo West's arrest by Minneapolis police officers. On July 14, 2020,

West was in the restroom at a restaurant in Minneapolis. Compl. ¶ 67. When he exited the restroom, he saw police officers entering the restaurant with their guns drawn. Id. ¶¶ 68-69. The officers yelled "Put your hands up!" and "Get down on the ground!" Id. ¶ 70. West did not know they were specifically addressing him. Id. ¶ 71. He complied with the directive to put his hands up but apparently did not get on the ground. Id. ¶ 72. He alleges that officers then slammed him to the ground, and that he was unable to soften his fall because his hands were still in the air. Id.

While he was on the ground, West alleges that officer Tyler Klund, whom he believes was wearing steel-toes shoes, "stomped hard" several times on his neck, back, and shoulders, and that his head "bounced off the hard restaurant floor." Id. ¶¶ 73-74. While Klund restrained him by "standing" on his neck and shoulder area, another officer (an unidentified defendant) grabbed his left arm and defendant Luther Huynh grabbed his right arm. Id. ¶ 75. Officers ultimately arrested him and placed him in a squad car.[1] Id. ¶ 76.

West asserts that while in the squad car he felt "minimal" bruising on his face, but was otherwise unaware that he was

---

[1] West alleges that the following Minneapolis police officers were present during his arrest: Klund, Mosey, Grout, Dubay, Walker, Stetson, Huynh, Daoheuang, and Osbeck, Jr. Id. ¶ 87.

2

injured, likely due to a rush of adrenaline. Id. ¶ 77. When asked, he confirmed that he was okay. Id. ¶ 78. He believes, however, that officers should have inquired as to his condition after his adrenaline subsided. Id.

Officers then took West to the police station where they questioned him about a recent shooting in Minneapolis. Id. ¶ 79. He denied involvement in the shooting and was taken to Sherburne County Jail for booking. Id. ¶¶ 79, 80.

West possessed a firearm during his arrest and was later convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). See United States v. West, 20-CR-165 (SRN/TNL), ECF No. 14. There appears to be no dispute that West had the loaded firearm in the waistband of his pants and that he attempted to flee during his arrest. See id. ECF No. 59, at 41:5-12, 47:14-17 ("[W]hen you were apprehended on this charge, you attempted to flee. It was a dangerous weapon. You had a loaded weapon in your waistband. You were in the middle of a restaurant."). The court sentenced him to 60 months' imprisonment, an upward variance, due to his extensive criminal history and the dangerous situation he created during his arrest. See id. ECF No. 55, at 2; id. ECF No. 59, at 46:22-47:17.

Although West complained repeatedly that he experienced constant migraines, extreme neck stiffness and soreness, insomnia, depression, anxiety, depression, memory loss, and decreased motor skills, he alleges that he was refused or provided minimal medical care while in custody following his arrest. See Compl. ¶¶ 81-84. West claims that he continues to suffer from ongoing bruising, headaches and migraines, dizzy spells, chronic nausea, sensitivity to light, poor memory and concentration, lack of focus, chipped teeth, and poor motor control. Id. ¶¶ 222-31.

The police reports describing West's arrest acknowledge that officers used force against him and that the arrest was captured on body-worn camera (BWC) footage. Id. ¶¶ 86, 89. West requested the BWC footage, but the footage he received only shows certain portions of his arrest and do not show the officers' use of force. Id. ¶¶ 93-96. In West's view, this means that officers either did not have their BWCs on or defendants failed to disclose - or have destroyed - this critical evidence. Id. ¶ 97.

West believes that the restaurant also had interior video cameras that would have captured his arrest, but he alleges that defendants chose not to obtain that footage. Id. ¶ 90. He alleges, however, that defendants obtained the restaurant's exterior camera footage. Id. ¶ 91. West's theory is that

4

defendants planned to let the interior camera footage lapse so that it could not be used to aid him in this case or the underlying criminal proceedings.[2]  Id. ¶¶ 91-92.

One of the police reports detailing the arrest, authored by officer Mosey, states that Mosey and Tyler Klund were the first on the scene and that Klund forced West to the ground and stepped on his shoulder to disarm him.  Id. ¶ 99.  The report states that West had no observable injuries as a result.  Id.  West alleges that Mosey intentionally lied about Klund's use of force.  Id. ¶ 104.  Mosey also reported that West "first put his hands in the air, but then he reached down with his right hand and grabbed the but[t] of a gun that was in his waistband."  Id. ¶ 99.  West disputes this aspect of Mosey's narrative to the extent it suggests that he was doing so to threaten or harm the officers.  See ECF No. 24, at 9, 16.

Once at the police station, Sergeant Darcy Klund, Tyler Klund's father, conducted a use of force review at Mosey's request.

---

[2] Defendants have submitted an email purporting to belie West's allegations in this regard, see ECF No. 19, but the court will not consider such evidence on a motion to dismiss, as it is neither a matter of public record nor embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  For the same reason, the court will not consider the post-arrest video footage submitted by defendants.  Even if the court were to consider that footage, it does not establish the nature and amount of force used by officers during the arrest.

5

Id. ¶ 87, 107.³  West contends that Darcy Klund falsely concluded that Tyler Klund did not use excessive force because he wanted to protect his son.  Id. ¶¶ 101, 106, 108.  West also contends that Mosey and Darcy and Tyler Klund conspired, along with the other officers involved in the arrest, to omit or alter evidence relevant to this case.  Id. ¶ 109.  He believes that this case represents yet another instance of excessive force and subsequent obfuscation that has tacitly become a pattern and practice within the Minneapolis Police Department.  See id. ¶¶ 111-217.

On May 24, 2021, West commenced this action under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.  West also raises various state law claims.  He specifically alleges that Klund used excessive force during his arrest in violation of the Fourth Amendment (Count 1) and the Fourteenth Amendment (Counts 2 and 3).  He further alleges that Klund's use of excessive force constituted battery (Count 7), negligence (Count 8), and negligent infliction of emotional distress (Count 8) under Minnesota law.  West also alleges that the individual officers conspired to interfere with his civil

---

³ West believes that Darcy Klund may also have been present during the arrest.  Id. ¶ 87.

rights by suppressing and/or spoliating evidence (Count 4) and that the City of Minneapolis is subject to municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) (Count 5) and City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) (Count 6), due to illegal policies and practices.  Defendants now move to dismiss.

## DISCUSSION

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause

7

of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, take into account matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media, 186 F.3d at 1079 (citation and internal quotation marks omitted). Here, the court considers public records regarding West's firearm conviction, which arose from the arrest at the center of this case. As noted, the court will not consider extraneous documents or the post-arrest video footage, as such evidence is not in the public record and is not embraced by the pleadings.

**II. Excessive Force Claims**

West alleges that Tyler Klund violated his Fourth and Fourteenth Amendment rights by applying excessive force during his arrest. Klund argues that these claims should be dismissed because they are barred by the doctrine of collateral estoppel, the force alleged in the complaint was reasonable under the circumstances, and he is entitled to qualified immunity.

**A. Collateral Estoppel**

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent

jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." United States v. Gurley, 43 F.3d 1188, 1198 (8th Cir. 1994) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). Collateral estoppel applies when:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

Id. (quoting Arkla Expl. Co. v. Tex. Oil & Gas Corp., 734 F.2d 347, 356 (8th Cir. 1984)). The preclusive doctrine applies to civil rights actions arising from alleged Fourth Amendment violations. Munz v. Parr, 972 F.2d 971, 973 (8th Cir. 1992). Relevant here, the Second Circuit Court of Appeals cautioned that the doctrine should be construed narrowly in cases where the government seeks to rely on findings made during sentencing for the underlying crime:

> Given the potential for unfairness associated with applying collateral estoppel based on sentencing findings, we hold that only [a] stricter approach remains appropriate in the sentencing context. Hence, regardless of how carefully considered an issue may have been during the process leading up to decision, and regardless of what may be inferred from that decision, estoppel does not apply to a finding that was not legally necessary to the final sentence.

S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 307 (2d Cir. 1999).

Although the court agrees with the Second Circuit's approach, it need not rely on a narrow construction and application of collateral estoppel, because the comments made by the court at sentencing do not address, let alone resolve, the core issues in the case: the extent to which West attempted to flee and struggled with officers, and the exact force applied by officers. Rather, during sentencing the court simply noted that West created a dangerous situation by having a loaded firearm in his waistband in a restaurant and attempting to flee. The court made no specific findings as to the nature of the struggle between West and the arresting officers. Nor did the court address the force applied by officers in effectuating West's arrest. Under these circumstances, collateral estoppel does not apply because the issues presented here are not identical to those adjudicated or conclusively resolved in the underlying criminal case.[4]

**B.   Reasonableness of Force**

Klund next argues that, even accepting West's allegations as true, the force he applied was reasonable as a matter of law given

---

[4] The elements of the underlying crime, felon in possession of a firearm, are not implicated here. See 18 U.S.C. § 922(g)(1) (prohibiting felons from possessing firearms that have been shipped or transported in interstate commerce). Thus, West's conviction does not provide a basis for collateral estoppel.

10

that West attempted to pull a loaded handgun from his waistband. The court disagrees. Even assuming West attempted to access the gun,[5] that fact would not conclusively establish (1) the specific force Klund used to subdue and restrain him, and (2) whether such force was in fact reasonable. The court must consider the broader context of the parties' actions - both pre- and post-restraint – to determine the legality of Klund's actions. This is not something the court can do at this early stage.[6]

### C. Qualified and Official Immunity

To prevail on qualified-immunity grounds on a motion to dismiss, "defendants must show that they are entitled to qualified immunity on the face of the complaint." Kalu v. Brooklyn Park Police/Fed'n, No. 15-cv-112, 2015 WL 5719462, at *6 (D. Minn. Sept. 28, 2015) (quoting Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005)). "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity [if that complaint]

---

[5] As noted, the record is unclear as to whether West concedes this point.

[6] Indeed, the cases Klund relies on for the proposition that he was entitled to use the force even as alleged are inapposite as they were all decided on summary judgment. See Aipperspach v. McInerney, 766 F.3d 803 (8th Cir. 2014); Loch v. Litchfield, 689 F.3d 961 (8th Cir. 2012); Thompson v. Hubbard, 257 F.3d 896 (8th Cir. 2001).

11

fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hager v. Ark. Dept. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether to grant a motion to dismiss on this basis, the court considers (1) whether the plaintiff has stated a plausible claim for violation of a constitutional right and (2) whether the right was clearly established at the time of the alleged infraction. Id. An official is entitled to qualified immunity unless "both of these questions are answered affirmatively." Nord v. Walsh Cty., 757 F.3d 734, 738 (8th Cir. 2014).

Based on the allegations raised in the complaint, the court cannot conclude that Klund is entitled to qualified immunity at this early stage of the proceedings. West alleges that Klund applied force well beyond what was necessary to effectuate his arrest and in doing so caused significant and lasting physical harm. West therefore has sufficiently alleged that Klund violated a constitutional right that was clearly established at the time. Unless and until there is evidence in the record to the contrary, West's claim cannot be dismissed.

The court likewise cannot conclude that Klund is entitled to official immunity at this time. "The doctrine of official immunity protects public officials from liability for discretionary actions taken in the course of their official duties." Bailey v. City of St. Paul, 678 N.W.2d 697, 700 (Minn. Ct. App. 2004) (citing Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs, 552 N.W.2d 711, 716 (Minn. 1996)). Such immunity "exists 'to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties.'" Id. (quoting S.L.D. v. Kranz, 498 N.W.2d 47, 50 (Minn. Ct. App. 1993)). Official immunity analysis proceeds in two steps. Id. at 701. First, a court asks whether the conduct challenged by the plaintiff is discretionary or ministerial. Id. Second, if the conduct is discretionary, a court asks whether the officer's conduct was malicious or willful. Id.

Here, Klund's conduct involved the exercise of individual judgment as to the amount of force necessary to subdue and arrest West. Klund's actions thus were discretionary and are protected unless they were willful or malicious. Conduct is willful or malicious if the officer "intentionally commits an act that he ... has reason to believe is prohibited. Rico v. State, 472 N.W.2d

13

...
...
...

100, 107 (Minn. 1991). The determination of whether an officer acted maliciously or willfully is usually a question of fact for the jury. See Elwood v. Rice Cty., 423 N.W.2d 671, 678 (Minn. 1988).

As already explained, West has adequately alleged that Klund used excessive force during his arrest. Those allegations are sufficient to also raise a valid question as to whether Klund acted maliciously or without legal justification. As a result, dismissal based on official immunity is not warranted. Whether the facts will support such immunity once the record is developed is a question for a later day.[7]

**III. Conspiracy Claim**

Defendants first argue that the court should dismiss West's conspiracy claim as barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held that "a section 1983 action should be dismissed if a judgment 'would necessarily imply the invalidity of [a plaintiff's] conviction or sentence,' unless the conviction or sentence was reversed, expunged, declared invalid, or called into question." Moore v.

---

[7] Because the court concludes that West has adequately pleaded his constitutional claims, the court rejects defendants' argument that West's Monell claim fails because there is no independently viable constitutional claim. See ECF No. 14, at 28.

14

Sims, 200 F.3d 1170, 1171 (8th Cir. 2000) (quoting Heck, 512 U.S. at 487). Heck therefore bars a prisoner from bringing a civil rights action to challenge the fact or duration of his incarceration. Heck, 512 U.S. at 483 (citing Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973)).

West's conspiracy claim does not implicate Heck. He does not challenge the basis of, nor does he seek to collaterally overturn, his conviction. Rather, West alleges that officers conspired to deprive him of his civil rights by attempting to cover up the excessive force used during his arrest. If West were to prevail on this claim, his criminal conviction would not be affected or undermined.

Defendants next argue that West failed to plausibly plead a conspiracy claim. The court disagrees.

> In order to show a constitutional conspiracy, a party must show that two or more individuals conspired for the purpose of depriving, either directly or indirectly, a person or persons of their right to equal protection of the laws or of equal privileges and immunities under the laws and that an act was done in furtherance of the conspiracy that caused an injury or deprivation to another.

Marti v. City of Maplewood, Mo., 57 F.3d 680, 685 (8th Cir. 1995). "This showing can be accomplished by [alleging] facts suggesting that [defendants] reached an understanding to violate [plaintiff's] civil rights." Id.

15

West has alleged enough to meet his burden at this early stage. Specifically, he alleges that BWC footage from only two of the nine or more officers on the scene have been disclosed to him. Compl. ¶¶ 86-87. Most notably missing is Tyler Klund's BWC footage. See id. He also alleges that not all officers wrote or turned over their police reports regarding the arrest. See id. ¶ 8. West further alleges that Mosey permitted Klund's father to conduct the review of his use of force and that Mosey signed the report to avoid the appearance of bias. See id. ¶ 107. He asserts that Darcy Klund concluded that his son's use of force was appropriate to shield him from liability. Id. ¶ 108. West also contends that defendants intentionally failed to secure footage from inside the restaurant that would have shown the arrest, and therefore the excessive force, in detail. Id. ¶ 109. It may well be that these allegations will not be supported by evidence adduced through discovery or are otherwise explained in defendants' favor. But for purposes of this motion, the court must accept them as true.

**CONCLUSION**

Accordingly, based on above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 13] is denied.

Dated: November 30, 2021

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court